**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**LARRY F. WHITEHURST,**

                                        **Petitioner,**

  **v.**                                                    **9:03-CV-0788**
                                                              **(NPM)**

**DANIEL A. SENKOWSKI, Superintendent,**

                                        **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::
<u>**APPEARANCES:**</u>                    **OF COUNSEL:**

**FOR THE PETITIONER**:

**LARRY F. WHITEHURST**
Petitioner, <u>Pro Se</u>
96-B-1034
Clinton Correctional Facility
Box 2001
Dannemora, NY 12929-2001

**FOR THE RESPONDENT:**

**HON. ANDREW CUOMO**            **ROBIN A. FORSHAW, Esq.**
Executive Chambers                Assistant Attorney General
Office of Attorney General
The Capitol
New York State Attorney General
Albany, NY 13224

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**

                    <u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.**    <u>**Background**</u>

        **A.**    <u>**State Court Proceedings**</u>

        The state court records reflect that at approximately 4:30 the evening of September 21,

1995, Rickel Knox, a seven year-old girl, had disappeared from the front of her home in Kingston,

New York.  See Supplemental Appendix on Appeal (reproduced in Exhibit C to Dkt. No. 11)

("Supp. App.") at 77.  Soon thereafter, law enforcement agents questioned petitioner, pro se, Larry

Whitehurst, who had been seen with Rickel around the time of her disappearance.  Supp. App. at

78.  Whitehurst failed to provide law enforcement agents with any assistance regarding the

whereabouts of Knox at that time, see id., and he thereafter retained an attorney to represent him

with respect to the investigation relating to the disappearance of Knox.  See Affidavit of Russell

Schindler (10/5/95) (reproduced in Exhibit B to Dkt. No. 11) at  ¶¶ 1-3.  At approximately 11:00

p.m. on September 23, 1995, the Kingston Police Department arrested Whitehurst.  Supp. App. at

79.  He was then read his Miranda rights,[1] and although he spoke with law enforcement agents for

several hours at that time, he failed to provide the police with any information regarding Knox's

whereabouts or condition.  Id.  The following day, just prior to Whitehurst's scheduled

arraignment on kidnapping and other charges, he suggested to law enforcement agents that he

could assist them in their efforts to locate Knox.  Id.  He then requested a meeting with an

Assistant District Attorney of Ulster County to discuss the terms of his cooperation.  Id.

Thereafter, at approximately 11:00 p.m. on September 24, 1995, Assistant District Attorney John

Prizzia, Esq. ("ADA Prizzia") met with Whitehurst at the Kingston police station.  Id.[2]

Whitehurst then spoke with ADA Prizzia for approximately one hour.  See Dkt. No. 11, Exh. B at

---

[1]     Miranda v. Arizona, 384 U.S. 436, 444 (1966) (holding that a person
questioned by law enforcement officers after being taken into custody must be warned that he
has the right to remain silent, that any statement he does make may be used as evidence
against him, and that he has a right to the presence of an attorney, either retained or
appointed).

[2]     At that time, Whitehurst stated that although he was no longer represented by
an attorney, he believed he could nevertheless speak freely with the police about his
involvement with Knox.  See Dkt. No. 11, Exh. B at 146.

153.  During that time, Whitehurst initially spoke "hypothetically" about Knox's condition, and suggested that she might well be well alive, however he refused to divulge her whereabouts.  <u>See</u> Dkt. No. 11, Exh. B at 153-54.  Whitehurst and ADA Prizzia then discussed the possibility of Whitehurst entering into a cooperation agreement with the authorities.  Those negotiations ultimately culminated in a written cooperation agreement signed by both parties.  <u>See</u> Dkt. No. 11, Exh. B at 138-40; Supp. App. at 79-80.[3]  Under the terms of the Cooperation Agreement, in return for Whitehurst leading the police to Knox, the District Attorney's office agreed that Whitehurst would be permitted to plead guilty to a charge of first degree kidnapping with respect to Knox.  <u>See</u> Cooperation Agreement.  If Knox were found alive, Whitehurst would receive a minimum sentence of ten years imprisonment on the kidnapping charge.  <u>Id.</u>  The Cooperation Agreement further provided that Whitehurst would not be charged with Knox's murder, and noted that if Knox were found dead, the minimum term of Whitehurst's sentence on the kidnapping charge would range "between ten and fifteen years, depending upon the relevant facts and circumstances." <u>See</u> Cooperation Agreement.

In the early morning hours of September 25, 1995, Whitehurst, ADA Prizzia and a team of law enforcement officers began searching for Knox.  <u>See</u> Supp. App. at 80.  During the course of that search, Whitehurst initially declared that the victim was "definitely alive" when he left her, however he subsequently admitted that he had struck her in the head before he left her and conceded that he might have strangled the child.  <u>See</u> Dkt. No. 11, Exh. B at 155.  At Whitehurst's

---

[3]        A copy of the cooperation agreement is reproduced at Dkt. No. 11, Exh. B at 100 ("Cooperation Agreement").  A handwritten addendum to that agreement that was written by Whitehurst provided that, in the event he chose to go to trial, the terms of the agreement were null and void.  <u>See</u> Cooperation Agreement.

suggestion, the team initially searched for Knox in an area of Ulster County known as "the caves." Id.  When Knox could not be located there, Whitehurst speculated that the victim might have crawled out of the cave.  Id.  After approximately five hours of searching several different locations, Whitehurst eventually brought the police to the general location of Knox's body.  Id. at 155; Supp. App. at 80.  At that time, her lifeless body was found buried under brush and leaves near Rockwell Lane in the Town of Ulster.[4]  See Dkt. No. 11, Exh. B at 155; see also Supp. App. at 80.

Shortly after the police located Knox, the District Attorney announced that he did not consider himself bound by the Cooperation Agreement.  See Dkt. No. 11, Exh. B at 149-50.  A felony complaint was subsequently filed against Whitehurst charging him with murder in the first degree.  See Dkt. No. 11, Exh. B at 156.  The case was subsequently presented to an Ulster County Grand Jury.  That accusatory body thereafter returned a multi-count indictment against Whitehurst, charging him with, inter alia, murder in the first degree (in violation of N.Y. Penal Law § 125.27(1)(a)(vii)), second degree murder (contrary to N.Y. Penal Law § 125.25(1)), first degree kidnapping (in violation of N.Y. Penal Law § 135.25(3)), rape in the first degree (contrary to N.Y. Penal Law § 130.35(3)), and first degree sodomy (in violation of N.Y. Penal Law § 130.50(1)).  See Indictment No. 172-95 (reproduced at Dkt. No. 11, Exh. B at 9-20) ("Indictment").  By notice filed in the Ulster County Court on January 26, 1996, the District Attorney declared his intention to seek the death penalty should Whitehurst be convicted of first degree murder.  See Dkt. No. 11,

---

[4]      An autopsy and forensic examination performed on Knox revealed that she had died as the result of massive blunt force injures to her head, which caused complex skull fractures and cerebral contusions.  See Dkt. No. 11, Exh. B at. 80-81.  Further examination of the seven year old victim revealed that she had been sexually abused.  Id. at 81.

4

Exh. B at 21.

After his arraignment on the above charges, Whitehurst moved, pursuant to New

York Civil Practice Law and Rules ("CPLR") Article 78, for a court order prohibiting the District

Attorney from prosecuting Whitehurst for first or second degree murder relating to the death of

Knox.[5]  In a Decision and Order dated December 4, 1995, the County Court ruled that it could not

prohibit the District Attorney from pursuing those charges because the Cooperation Agreement

upon which Whitehurst's CPLR application was based did not create any jurisdictional

impediment to the prosecution which Whitehurst sought to prevent.  See Whitehurst v. Kavanagh,

167 Misc.2d 86, 90 (Albany Co. Sup. Ct. 1995).  That court also opined that the Cooperation

Agreement itself was unenforceable because the "bargaining chip" that Whitehurst utilized in

securing that agreement – the safe return of the victim – rendered the agreement contrary to public

policy.  See Whitehurst, 167 Misc.2d at 92 (citation omitted).  Petitioner appealed that decision to

the New York State Supreme Court, Appellate Division, Third Department.  That court, however,

ruled that the trial court had properly exercised its discretion in denying petitioner's motion.

Whitehurst v. Kavanagh, 218 A.D.2d 366 (3rd Dept. 1996).  New York's Court of Appeals denied

Whitehurst leave to appeal that determination in its decision dated May 7, 1996.  See Whitehurst

v. Kavanagh, 88 N.Y.2d 873 (1996).

On November 20, 1996, following negotiations between Whitehurst's counsel and the

District Attorney's office, Whitehurst appeared before County Court Judge J. Michael Bruhn to

enter a change of plea with respect to the charges brought against Whitehurst in the Indictment.

Under the terms of that plea agreement, Whitehurst was required to plead guilty to one count of

---

[5]        This Court was not provided with a copy of that application.

first degree murder in satisfaction of all charges brought against him in that accusatory instrument.

See Dkt. No. 11, Exh. B at 33-34.  During the colloquy between Whitehurst and the trial court

regarding the proposed plea, Whitehurst informed that court that:  i) he was pleading guilty of his

own free will; ii) no one was forcing him to plead guilty; iii) he had had the opportunity to discuss

the proposed plea with his attorney and other members of the Capital Defender's Office; and iv) he

was satisfied with the services provided to him by that Office.  See Dkt. No. 11, Exh. B at 34-35.

Whitehurst also admitted at that proceeding that he understood that by his plea, he was:  i)

admitting that on September 21, 1995, he had killed Knox during the course of her abduction; ii)

waiving his rights to, inter alia, a jury trial, proof of his guilt beyond a reasonable doubt, cross-

examine all prosecution witnesses, and to call witnesses on his own behalf.  See Dkt. No. 11, Exh.

B at 35-37.  The County Court then reviewed the terms of the proposed plea and sentence with

Whitehurst.  See Dkt. No. 11, Exh. B at 38.[6]  After Judge Bruhn determined that Whitehurst:  i)

had spoken about the proposed plea and sentence with his attorneys; ii) understood the terms of the

plea; and iii) understood the terms of the agreed upon sentence, the County Court accepted

Whitehurst's guilty plea.  See Dkt. No. 11, Exh. B at 38-40.

On December 12, 1996, petitioner was sentenced by Judge Bruhn to the stipulated term of

life imprisonment without the possibility of parole.  See Dkt. No. 11, Exh. B at 47, 66.  The

following month, on January 7, 1997, Whitehurst filed his appeal of his conviction and sentence

with the Appellate Division.  See Dkt. No. 11, Exh. B at 2.  However, prior to perfecting that

appeal, he filed a motion to vacate his judgment of conviction pursuant to Section 440.10 of New

---

[6]     Under the terms of the plea agreement, Whitehurst stipulated to the fact that he
would be sentenced to a term of life imprisonment without the possibility of parole.  See Dkt.
No. 11, Exh. B at 38-39.

York's Criminal Procedure Law.  <u>See</u> Dkt. No. 11, Exh. B at 69-89 ("CPL Motion").  In that

application, Whitehurst sought to vacate his conviction and sentence and to enforce the

Cooperation Agreement which Whitehurst argued precluded his prosecution – and subsequent

conviction and sentence – on murder charges.  <u>Id.</u>  In support of his application, Whitehurst

claimed that his attorney rendered constitutionally ineffective assistance when he allowed

Whitehurst to plead guilty to the first degree murder charge before the trial court issued its

decision on pretrial motions filed by counsel.  <u>See</u> Dkt. No. 11, Exh. B at 75-76.  Whitehurst

additionally contended that the Ulster County District Attorney had violated Whitehurst's

constitutional and civil rights, thereby rendering the guilty plea involuntary, when the District

Attorney's office "threaten[ed] [Whitehurst] with the death penalty and ... personal injury at the

hands of the victim's family." <u>See</u> Dkt. No. 11, Exh. B at 76.  The District Attorney subsequently

filed opposition papers concerning Whitehurst's CPL Motion, <u>see</u> Dkt. No. 11, Exh. B at 106-15,

and on February 3, 1999, County Court Judge Frank J. Labuda scheduled a hearing on

Whitehurst's CPL application, which was thereafter held in Ulster County Court on March 18,

1999.  <u>See</u> Dkt. No. 11, Exh. B at 124.

At that proceeding, ADA Prizzia testified as to the facts and circumstances surrounding the

negotiations that culminated in the Cooperation Agreement.  <u>See</u> Dkt. No. 11, Exh. B at 135-62.

In a Decision and Order dated April 29, 1999, Judge Labuda denied Whitehurst's CPL Motion.

<u>See</u> <u>People v. Whitehurst</u>, No. 172-95 (Ulster Cty Ct. Apr. 29, 1999) (reproduced in Dkt. No. 12,

Exh. C at 122-29) ("April, 1999 Order").  In that order, the County Court determined that

Whitehurst had entered his guilty plea knowingly, voluntarily and intelligently, and that such plea

was made with the effective assistance of counsel.  <u>See</u> April, 1999 Order at 4.  That court also

7

ruled that the Cooperation Agreement Whitehurst sought to enforce was void because Whitehurst

had extorted the promises made by the District Attorney's office and misled that office into

believing that Knox might have been alive at the time he was negotiating the terms of the

Cooperation Agreement.  See April, 1999 Order at 4-5 & n.1.  Whitehurst applied to the Third

Department for permission to appeal the denial of his CPL § 440 Motion, and on July 6, 1999, the

Honorable Victoria Graffeo granted him leave to appeal that decision.  See Dkt. No. 12, Exh. D.

That appeal was heard in conjunction with Whitehurst's direct appeal of his conviction.  E.g., Dkt.

No. 12, Exh. B at 2.

      In Whitehurst's appeal, appellate counsel argued that:  1) Whitehurst's plea was not

knowing, voluntary, and intelligent; 2) the trial court improperly failed to specifically enforce the

Cooperation Agreement; 3) the Indictment was jurisdictionally defective; 4) the evidence

presented to the Grand Jury was obtained in violation of Whitehurst's right to counsel; 5)

Whitehurst was denied the effective assistance of counsel; and 6) Whitehurst's plea was invalid

because New York's Court of Appeals had previously found the  provisions of New York's first

degree murder statute to which Whitehurst pleaded guilty to be void.  See Whitehurst's Brief on

Appeal (reproduced at Dkt. No. 11, Exh. A).  The District Attorney opposed Whitehurst's appeal

(see Dkt. No. 11, Exh. C), and in its decision dated January 31, 2002, the Third Department

affirmed Whitehurst's conviction and sentence in all respects.  See People v. Whitehurst, 291

A.D.2d 83 (3d Dept. 2002).  Whitehurst's application for leave to appeal that decision to New

York's Court of Appeals was denied by that court on April 3, 2002.  See People v. Whitehurst, 98

N.Y.2d 642 (2002).

      **B.**    **This Proceeding**

On June 23, 2003, Whitehurst filed a <u>pro</u> <u>se</u> petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. <u>See</u> Dkt. No. 1. By order filed July 21, 2003, now-Chief United States District Judge Norman A. Mordue directed Whitehurst to file an amended pleading herein if he wished to proceed with this action, <u>see</u> Dkt. No. 3, and on July 31, 2003 Whitehurst filed that amended pleading in accordance with Judge Mordue's directive. <u>See</u> Dkt. No. 4 ("Am. Pet."). In that pleading, Whitehurst argues that:  i) his plea was not knowing, intelligent and voluntary; ii) he is entitled to specific performance of the Cooperation Agreement; iii) the manner in which the Indictment was secured rendered it jurisdictionally defective; and iv) he was denied the effective assistance of trial counsel. <u>See</u> Am. Pet., Grounds One through Four. Judge Mordue then ordered the respondent to file his response to Whitehurst's amended petition, <u>see</u> Dkt. No. 6, and on November 14, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum of law in opposition to Whitehurst's petition. Dkt. Nos. 11-12. Petitioner thereafter submitted a "traverse" in further support of his amended habeas application. <u>See</u> Dkt. No. 13.

## II.   <u>Discussion</u>

### A.   <u>Review of Whitehurst's Claims</u>

#### 1.   <u>Propriety of Whitehurst's Guilty Plea</u>

Whitehurst initially claims that his guilty plea must be vacated because it was not knowing, intelligent and voluntary. <u>See</u> Am. Pet., Ground One. In support of this claim, petitioner argues that he was induced into pleading guilty by the "false promise that he would not be charged with murder in return for his cooperation in finding the victim," <u>id.</u>, and that ADA Prizzia subsequently demanded that Whitehurst either proceed to trial (thereby forfeiting the rights Whitehurst

9

possessed under the Cooperation Agreement)[7] or plead guilty to murder in the first degree, a charge that was also contrary to the terms of the Cooperation Agreement.  See Am. Pet., Ground One.

In Oyague v. Artuz, 393 F.3d 99 (2d Cir. 2004), the Second Circuit acknowledged that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") a federal habeas court "is required to give deference to findings of fact made by the state court after a full and fair hearing at which the material facts were adequately developed."  Oyague, 393 F.3d at 104 (citation and internal quotation omitted).  Nevertheless, that court opined that "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards."  Oyague, 393 F.3d at 104 (citations and internal quotation omitted).  The Oyague court then explicitly held that "the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law ... and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)."  Oyague, 393 F.3d at 104 (quoting Marshall v. Lonberger, 459 U.S. 422, 431 (1983)) (other citations omitted).

This Court therefore considers Whitehurst's claim challenging the propriety of his guilty plea in light of Oyague.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S.

---

[7]     As noted ante at n.3, a handwritten addendum to the Cooperation Agreement provided that, in the event Whitehurst chose to proceed to trial on the Indictment, the terms of the Cooperation Agreement were null and void.  See Cooperation Agreement.

25, 31 (1970)); see also Boykin v. Alabama, 395 U.S. 238, 242-43 (1969) (United States

Constitution requires that guilty plea be knowingly and voluntarily entered); Parke v. Raley, 506

U.S. 20, 29 (1992) (guilty plea is valid when it is both knowingly and voluntarily made).

     Since the vitality of Whitehurst's initial ground for relief requires resolution of the issue of

whether Whitehurst's guilty plea was constitutionally sound, a detailed review of the transcript of

the proceeding at which Whitehurst pleaded guilty to the charge of first degree murder is

warranted.  The transcript of that proceeding reflects the following colloquy between defense

counsel, Whitehurst and the court:

| | |
|---|---|
| DEFENSE COUNSEL: | Your Honor it is [Whitehurst's] intention this morning to withdraw his previously entered pleas of not guilty in this matter and his intention pursuant to discussions that have been had in this matter to enter a plea to the first count of this indictment. |
| THE COURT: | The first count charges the defendant with murder in the first degree; is that correct? |
| DEFENSE COUNSEL: | That is correct, Your Honor. |
| THE COURT: | Mr. Whitehurst, you heard [defense counsel] just tell me that it is your intention at this point in time you wish to withdraw your previously entered plea of not guilty to each and every count of indictment 172-95 and enter a plea of guilty to the first count of that indictment, that charging you with murder in the first degree.  Is that the plea that you wish to enter at this time? |
| WHITEHURST: | Yes, it is. |
| THE COURT: | Are you making that plea of our own free will? |

| WHITEHURST: | Yes. |
|---|---|
| THE COURT: | Is anybody forcing you to make that plea, Mr. Whitehurst? |
| WHITEHURST: | No. |
| THE COURT: | Have you had an opportunity to discuss this matter, to discuss this plea with your attorney and the other members of the Capital Defender Office? |
| WHITEHURST: | Yes. |
| THE COURT: | Are you satisfied with the services that have been rendered to you by the Capital Defender Office? |
| WHITEHURST: | Yes. |
| THE COURT: | Mr. Whitehurst, do you understand that if you plead guilty to the first count of this indictment, you are admitting as alleged in the indictment that you the defendant being more than 18 years old, in the County of Ulster, State of New York, on or about the 21st day of September 1995, with intent to cause the death of Rickel Knox, caused the death of Rickel Knox. Further that Rickel Knox was killed while you the defendant was in the course of and in furtherance of committing the crime of kidnapping in the first degree to wit, you abducted Rickel Knox ...who was not a participant in the crime, Rickel Knox died during the abduction before she was able to return or be returned to safety? |
| WHITEHURST: | Yes. |

See Plea Tr. at 2-4.  The County Court then discussed in detail the various rights Whitehurst

would be waiving by pleading guilty to the charge, see Plea Tr. at 4-6, and then directed

12

Whitehurst's counsel to place on the record the sentence that was to be imposed on

Whitehurst pursuant to the terms of the plea agreement.  The record reflects the following

discussion specifically related to the issue of Whitehurst's sentence:

| | | |
|---|---|---|
| DEFENSE COUNSEL: | | Your Honor, for the record based upon discussions that have been had between our office, the District Attorney's Office and Your Honor it is my understanding that upon Mr. Whitehurst's plea that he would be sentenced to a sentence of life imprisonment without parole as provided for under the statue.  I have indicated this to Mr. Whitehurst that it is his understanding as to the sentence that would be pronounced upon his plea of guilty. |
| THE COURT: | | Mr. Whitehurst, is that what you discussed with your attorneys? |
| WHITEHURST: | | Yes, it is. |
| THE COURT: | | And has anybody else made any other sentencing promises to you Mr. Whitehurst? |
| WHITEHURST: | | No. |
| THE COURT: | | Knowing that if you plead guilty to the first count of this indictment you will receive that sentence life without parole you still wish to give up your right to a trial and enter a plea of guilty? |
| WHITEHURST: | | Yes. |

Plea Tr. at 7-8.  Whitehurst then admitted that on September 21,1995 he abducted Knox in

Kingston, New York, and that "[d]uring the course of and in furtherance of the kidnapping [he]

13

intentionally caused the death of Rickel Knox by hitting her with a rock." Plea Tr. at 8. The Court thereafter accepted Whitehurst's guilty plea to the charge of first degree murder. Plea Tr. at 13-14.

In considering whether a plea allocution survives a constitutional challenge to its validity, it has been observed that: "there is no specific series of questions that a state court judge must ask in the course of a plea allocution in order to satisfy due process. Due process requires only that the courts provide safeguards sufficient to insure the defendant what is reasonably due in the circumstances." White v. Walker, No. 01-CV-0238 (Dkt. No. 28), slip op. at 37 (N.D.N.Y. Sept. 2, 2004) (Peebles, M.J.), adopted White v. Walker, No. 01-CV-0238 (Dkt. No. 30), slip op. at 1 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.) (internal quotation and citation omitted). The transcript of the proceeding at which Whitehurst pleaded guilty to the first degree murder charge establishes that he specifically informed the County Court that: i) he had discussed the plea with his attorneys; ii) he was satisfied with their services; iii) no one was forcing him to plead guilty; and iv) he was entering the plea of his own free will. See Plea Tr. at 3-4. At that proceeding, Whitehurst also acknowledged – on two separate occasions – that he was pleading guilty to the crime of first degree murder. See Plea Tr. at 3, 13-14. Additionally, although the Cooperation Agreement which he now seeks to enforce specifically provided that the minimum term of imprisonment he was to receive if the victim proved to be deceased was "between ten and fifteen years, depending upon the relevant facts and circumstances," see Cooperation Agreement, Whitehurst represented to the County Court that no sentencing promises – other than the agreed upon term of imprisonment of life without the possibility of parole – had been made to Whitehurst to induce his guilty plea. Plea Tr. at 7. These factors all

support the Appellate Division's determination (see Whitehurst, 291 A.D.2d at 86-87) that Whitehurst's guilty plea was valid.

Whitehurst additionally asserts in his first ground for relief that he was induced into pleading guilty by the "false promise" of the District Attorney to forego pursuing murder charges against Whitehurst.  See Am. Pet., Ground One.  However, Whitehurst entered his guilty plea more than one year **after** he himself concedes he was aware that the District Attorney **publically stated** that he would **not** honor the Cooperation Agreement.  Compare Affidavit in Support of CPL Motion at ¶ 39 (Whitehurst declaring, under penalty of perjury, that "immediately" after he had performed all that was required of him under the Cooperation Agreement (in September, 1995), the District Attorney "publically announced that he did not consider himself bound by it") with Plea Tr. at 1 (guilty plea entered in County Court on November 20, 1996.  Moreover, at his change of plea, Whitehurst had ample opportunity to reference the Cooperation Agreement he now seeks to enforce, however he chose to refrain from mentioning that agreement at that proceeding.  Furthermore, Whitehurst's actions at his change of plea – including his pleading guilty to the first degree murder charge and acknowledging that his sentence would be life imprisonment without the possibility of parole – squarely contradicted the terms of the Cooperation Agreement.  These facts strongly suggest that Whitehurst himself knew that such agreement had been superceded by the plea agreement into which he had subsequently entered with the District Attorney's office.

A guilty plea must reflect a "voluntary and intelligent choice among the alternative courses of action open to the defendant."  Wilson v. McGinnis, 413 F.3d 196, 198-99 (2d Cir. 2005) (quoting Alford); Scott v. Superintendent, Mid-Orange Correctional Facility, No.

15

03-CV-6383, 2006 WL 3095760, at *7 (E.D.N.Y. Oct. 31, 2006) (quoting Alford); Urena v.

People of the State of New York, 160 F.Supp.2d 606, 610 (S.D.N.Y. 2001) (citing Ventura v.

Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)).  "A guilty plea is intelligent and voluntary

when the defendant had the advice of counsel, understood the consequences of the plea, and

was not physically or mentally coerced."  Jones v. Perlman, No. 05 CIV. 5338, 2006 WL

490055, at *1 (S.D.N.Y. Feb. 28, 2006) (citing Parke, 506 U.S. at 36); see also Benitez v.

Green, No. 02 CIV.63321, 2005 WL 289753, at *9 (S.D.N.Y. Jan. 31, 2005) (citation omitted);

Foreman v. Garvin, No. 99 Civ. 9078, 2000 WL 631397, at *10 (S.D.N.Y. May 16, 2000);

Heron v. People, 98 Civ. 7941, 1999 WL 1125059, at *5 (S.D.N.Y. Dec. 8, 1999).

Nothing at Whitehurst's change of plea indicated that his plea was not knowingly,

intelligently and voluntarily made.  Therefore, this Court denies his first ground for relief.

### 2.    Standard of Review Applicable to Remaining Claims

This Court now briefly reviews the deferential standard of review that must be afforded

the other findings of the state courts relating to Whitehurst's conviction, sentence and appeal.

The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act

("AEDPA") brought about significant new limitations on the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.

In providing federal district courts with guidance concerning the application of this new,

deferential standard, the Second Circuit noted in Rodriguez v. Miller, 439 F.3d 68 (2d Cir.

2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or

16

> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).  Additionally, under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also DeBerry, 403 F.3d at 66; Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).  The Second Circuit has additionally noted that:

> [u]nder AEDPA, we ask three questions to determine whether a
> federal court can grant habeas relief: 1) Was the principle of
> Supreme Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled?  2) If so, was the
> state court's decision "contrary to" that established Supreme
> Court precedent? 3) If not, did the state court's decision
> constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"  Rodriguez, 439 F.3d at 73 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Rodriguez, 439 F.3d at 73 (quoting Williams, 529 U.S. at 413).  A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  The Rodriguez court noted that although "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application in light of the AEDPA, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Rodriguez, 439 F.3d at 73 (quoting Francis S., 221 F.3d at 111).

## B.    Remaining Claims

### 1.    Specific Performance of the Cooperation Agreement

In his second ground, Whitehurst notes that he was charged with capital murder in the Indictment despite the fact that under the terms of the Cooperation Agreement, the District Attorney had agreed to only charge Whitehurst with kidnapping.  See Am. Pet., Ground Two. Whitehurst asserts that his indictment and subsequent conviction on the first degree murder charge "clearly violated the Cooperation Agreement" and must therefore be set aside.

#### i.    Clearly Established Supreme Court Precedent

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).  However, where a petitioner's plea "was in no sense induced by the prosecutor's withdrawn offer," and is instead

18

knowingly, intelligently and voluntarily made after a prior agreement has been withdrawn, such

a guilty plea "is in no sense the product of governmental deception" and cannot be said to have

"rested on [an] unfulfilled promise" of a prior, withdrawn offer.  Mabry v. Johnson 467 U.S.

504, 510 (1984) (internal quotations omitted).

### ii.    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

As discussed more fully above in the context of Whitehurst's first ground for relief, it is

clear that petitioner was aware for more than a year prior to the date on which he pleaded guilty

to the conviction attacked herein that the prosecutor would not honor the Cooperation

Agreement.  Petitioner never referred to that agreement during the course of his plea colloquy

with the County Court, and no reasonable view of the state court record supports a claim that

Whitehurst's guilty plea was, in any way, induced by the Cooperation Agreement.[8]  Thus, this

Court adopts the state court's determination that Whitehurst's guilty plea "extinguish[ed] any

claims that [he] may have had under the cooperation agreement."  Whitehurst, 291 A.D.2d at

86; e.g., Mabry 467 U.S. at 510.

Moreover, even if the guilty plea did not extinguish any claims that Whitehurst could

assert that arose out of the Cooperation Agreement, this Court concurs with the Third

Department's finding that such agreement was nevertheless subject to rescission based upon the

material misrepresentation made by Whitehurst to the District Attorney's office which induced

that office to enter into such agreement.  Specifically, the facts outlined above establish that

---

[8]      A logical inference that can be drawn from Whitehurst's failure to refer to the Cooperation Agreement at his change of plea is that he was well aware at that time that such agreement was repudiated by the District Attorney and could not be enforced.

19

Whitehurst strongly suggested to ADA Prizzia that Knox was alive at the time he was negotiating the Cooperation Agreement.  However, "the uncontroverted medical evidence" established that a blow to Knox's head administered by Whitehurst "caused her death instantaneously."  Whitehurst, 291 A.D. 2d at 89; see also Supp. App. at 81 (pathologist who performed the autopsy on Knox opining that she had died instantly from the first blow she sustained to her head).  Moreover, Whitehurst "buried the child's body under leaves and other debris before leaving her," id., another fact that demonstrated that petitioner knew that Knox was dead at the time he was negotiating the terms of the Cooperation Agreement.

In New York, it is "well settled that an innocent misrepresentation of a material fact permits rescission even though made without an intent to deceive."  Stern v. Satra Corp., 539 F.2d 1305, 1308 (2d Cir. 1976) (citation omitted).  It is beyond cavil that the primary motivation of the District Attorney's office in entering into the Cooperation Agreement was to recover Knox before she perished.  Whitehurst buried the child before he left her body; he therefore knew that she was dead before he negotiated the terms of the Cooperation Agreement.

In sum, Whitehurst's material misrepresentation to the District Attorney's office regarding the condition of Knox when he left her clearly enabled that office to rescind the Cooperation Agreement.  Additionally, Whitehurst has not established that his guilty plea – which as noted above was voluntarily, intelligently and knowingly made – was, in any way, induced by that Cooperation Agreement, which the prosecution disavowed more than one year prior to the challenged plea.  Accordingly, Whitehurst's second ground for relief, which seeks specific performance of the Cooperation Agreement, is denied.

### 2.    **Defective Indictment**

20

Petitioner next argues that the Indictment to which he pleaded guilty was jurisdictionally defective and that, as a result, his conviction must be vacated.  See Am. Pet., Ground Three.

### i.    Clearly Established Supreme Court Precedent

In Tollett v. Henderson, 411 U.S. 258 (1973), the Supreme Court noted that:

> a guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.  When a criminal defendant
> has solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea.

Tollett, 411 U.S. at 267.  Thus, a guilty plea "foreclose[s] direct inquiry into the merits of claimed antecedent constitutional violations."  Tollett, 411 U.S. at 266; see also Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) ("a person complaining of ... antecedent constitutional violations ... is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases") (internal quotations and citations omitted).

### ii.    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

The claims asserted by Whitehurst in his third ground for relief all arise out of claimed wrongful conduct that occurred prior to the date on which he pleaded guilty to the first degree murder charge.  For example, Whitehurst argues that the Indictment "was obtained using statements taken from petitioner in violation of his right to counsel and through false promises not to indict for murder."  Am. Pet., Ground Three.  Whitehurst further alleges in such claim that "illegally obtained evidence" was used to indict him, and that, as a result, the Indictment

became illegally "tainted."  Id.  However, as noted above, this Court has determined that

Whitehurst's guilty plea is valid and not subject to habeas attack.  That finding precludes

petitioner from now challenging the legality of events that occurred prior to the entry of that

plea, see Tollett, 411 U.S. at 266-67, including his habeas claims that the prosecution

improperly used statements he made to law enforcement agents to secure the Indictment, or

which otherwise argue that the evidence presented to the grand jury to obtain that accusatory

instrument was "illegally tainted."  Id., see also United States v. Broce, 488 U.S. 563, 573-74

(1989) (guilty plea forecloses claim that prosecution violated Double Jeopardy Clause of the

United States Constitution in prosecution the defendant); United States v. Gregg, 463 F.3d 160,

166 (2d Cir. 2006) (where guilty plea is valid, "how the supporting evidence was recovered is

irrelevant") (citing Menna v. New York, 423 U.S. 61, 62 n.2 (1975)); United States v. Garcia,

339 F.3d 116, 117 (2d Cir. 2003) ("a defendant who knowingly and voluntarily enters a guilty

plea waives all non-jurisdictional defects in the prior proceedings"); United States v. Moloney,

287 F.3d 236, 239 (2d Cir. 2002) ("[b]ecause of his guilty plea, [appellant] has waived any and

all non-jurisdictional defects in the indictment"); Crispino v. Allard, 378 F.Supp.2d 393, 414

(S.D.N.Y. 2005) ("any and all non-jurisdictional defects raised in the indictment are waived"

where guilty plea to indictment is valid); Conyers v. McLaughlin, 96-CV-1743, 2000 WL

33767755, at *7 (N.D.N.Y. Jan. 27, 2000) (Sharpe, M.J.) ( "petitioner's pretrial preparation

claim is waived" where guilty plea to charge was knowingly, intelligently and voluntarily

made), adopted Conyers v. McLaughlin, 96-CV-1743 (Dkt. No. 20) (N.D.N.Y. Feb. 22, 2000)

(Mordue, J.).   Additionally, although Whitehurst argues that the Indictment was

"jurisdictionally defective," see Am. Pet., Ground Three, the undersigned notes that

jurisdictional defects in a criminal indictment "refer[] to a court's statutory or constitutional power to adjudicate the case." Sapia v. United States 433 F.3d 212, 217 (2d Cir. 2005) (internal quotations omitted); see also United States v. LaSpina, 299 F.3d 165, 178 n.4 (2d Cir. 2002) (defects in an indictment relate to the power of the court to adjudicate a case). Petitioner has never alleged in the state courts, and cannot properly assert herein, that the Ulster County Court did not have jurisdiction to entertain hearings – including Whitehurst's change of plea – that related to the charges brought against Whitehurst in the Indictment.

Thus, the Appellate Division properly found that Whitehurst's guilty plea precluded that court from considering his challenges to the evidence used to obtain the Indictment. See Whitehurst, 291 A.D.2d at 87-88. Since that decision is neither contrary to, nor represents an unreasonable application of, clearly established Supreme Court precedent, this Court denies Whitehurst's third ground for relief.

### 3.   Ineffective Assistance of Counsel

In his fourth and final claim, petitioner argues that his conviction must be set aside because it was obtained as a result of the ineffective assistance of counsel. See Am. Pet., Ground Four. This Court therefore briefly reviews the legal principles which govern this aspect of Whitehurst's habeas petition.

### i.   Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: a) that counsel's representation fell

23

below an objective standard of reasonableness, measured in light of the prevailing professional

norms; and b) resulting prejudice, i.e., a reasonable probability that, but for counsel's

unprofessional performance, the outcome of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521

(2003) ("the legal principles that govern claims of ineffective assistance of counsel" were

established in Strickland).

### ii.     Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In support of his claim that his trial attorney rendered ineffective assistance, Whitehurst

argues that his attorney improperly advised petitioner to plead guilty before the County Court

issued a decision which addressed the suppression motion counsel had filed on Whitehurst's

behalf.  See Am. Pet., Ground Four.  Petitioner asserts that his attorney therefore "did not know

what evidence the court would have allowed the prosecution to have used at trial."   Id.  He

further contends that his attorney wrongfully informed Whitehurst that if he failed to plead

guilty to the first degree murder charge, "he would die."  Id.

The Third Department rejected Whitehurst's claim of ineffective assistance.  Whitehurst

291 A.D.2d at 89.  This Court must therefore ascertain whether such finding is either contrary

to, or represents an unreasonable application of, Strickland and its progeny.

In support of Whitehurst's claim that counsel's failure to wait until the County Court

ruled on the suppression motion before arranging for his guilty plea amounted to ineffective

assistance, he argues that the trial court "would have had to suppress the evidence obtained

illegally from petitioner."  See, e.g., Memorandum of Law in Support of Amended Petition at

24

21-22.

Initially, the Court finds Whitehurst's claim that he would have necessarily prevailed on his suppression motion to be nothing more than rank speculation. However, federal habeas relief cannot be granted upon claims that are rooted in speculation. Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); Osinoiki v. Riley, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden") (citing Machibroda v. United States, 368 U.S. 487, 495 (1962)); Williams v. Burge, No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), adopted Williams v. Burge, No. 02-CV-0695, Dkt. No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.).

However, even assuming, arguendo, that there is a reasonable probability that Whitehurst would have prevailed on his suppression motion, "the question then becomes what was the likelihood that defense counsel would have changed his recommendation as to the advisability of pleading guilty," an inquiry that "requires looking at the strength of the prosecution's case." Hibbert v. Poole, 415 F.Supp.2d 225, 234 (W.D.N.Y. 2006).

In denying Whitehurst's claim alleging ineffective assistance, the Appellate Division characterized the evidence against him as "overwhelming." Whitehurst 291 A.D.2d at 89. After reviewing the state court record provided to the Court in conjunction with the present action, this Court concurs with the Third Department's characterization of the evidence that the prosecution had amassed against Whitehurst. Specifically, it is uncontroverted that Whitehurst

was the last individual seen with Knox on the day she disappeared.[9]  Additionally, he and the victim's mother had been having an affair which ended on the afternoon of the kidnapping after petitioner and the victim's mother became embroiled in an argument.  See Dkt. No. 11, Exh. C at 53.  Furthermore, the eventual discovery of Knox's body seemed likely; the Kingston Police Department, the New York State Police and the Federal Bureau of Investigation were canvassing the neighborhood where Knox had disappeared.  See Dkt. No. 11, Exh. C at 21. Additionally, police canine units and mounted police officers were also utilized during the search, and the victim's body was discovered a few miles from Knox's home off of a road which showed signs that it had recently been disturbed.  Id.  In light of the substantial evidence that had been obtained which implicated Whitehurst in the kidnapping and murder of Knox, "the likelihood that defense counsel would have changed his recommendation as to the advisability of pleading guilty was not very high.  [Petitioner] thus is unable to establish that he was prejudiced by pleading guilty prior to receiving a decision on the suppression motion." Hibbert, 415 F.Supp.2d at 235.

Whitehurst also appears to suggest that his guilty plea was motivated out of fear – he claims that his attorney warned petitioner that if he failed to plead guilty to the first degree murder charge, "he would die."  Am. Pet., Ground Four.  However, on January 26, 1996, the District Attorney filed a formal declaration to seek the death penalty against Whitehurst.  See Dkt. No. 11, Exh. B at 21.  Thus, counsel's warning to Whitehurst that his conviction on the charges could well result in his death was not incorrect.  Since petitioner has not demonstrated

---

[9]       The victim was observed entering Whitehurst's car the day she was murdered. See Dkt. No. 11, Exh. C at 53.

that his attorney misrepresented the maximum sentencing exposure Whitehurst would face upon his conviction of the charges, this claim does not support his request for habeas relief. E.g., Hibbert, 415 F.Supp.2d at 236-37 (ineffective assistance not demonstrated where petitioner pleaded guilty following advice from counsel that may have "overestimated the possible sentence exposure" of petitioner).[10]

Furthermore, as the Appellate Division properly noted, Whitehurst received a favorable plea bargain from the District Attorney. Whitehurst, 291 A.D.2d at 89. The relatively favorable disposition of the criminal charges pending against Whitehurst is another factor that militates against a finding that his attorney rendered ineffective assistance. See Seifert v. Keane, 74 F.Supp.2d 199, 206 (E.D.N.Y. 1999) ("[g]iven the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient") (footnote and citations omitted), aff'd, 205 F.3d 1324 (2d Cir. 2000).

Finally, at the time of his plea, Whitehurst expressly advised the County Court that he was satisfied with the manner in which he was represented by counsel with respect to the criminal charges against him. See Plea Tr. at 3-4. This factor also supports the state court's determination that Whitehurst's claim of ineffective assistance was without merit.

In sum, petitioner has not established that his trial attorney rendered ineffective assistance of counsel. A fortiori, petitioner has not established that the Third Department's decision denying this aspect of his appeal is either contrary to, or represents an unreasonable

---

[10]    To the extent petitioner now suggests that his plea was invalid because it was motivated by fear, the Court rejects such claim because, as noted above, the plea colloquy establishes that Whitehurst knowingly, intelligently and voluntarily pleaded guilty to the first degree murder charge.

application of, the clearly established Supreme Court precedent noted above.  Thus, this final

ground for relief must be denied.

### III.    Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals
> from –
>
> > (A) the final order in a habeas corpus proceeding
> > in which the detention complained of arises out of
> > process issued by a State court ....[11]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant

has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. §

2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to

issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted

by the parties in conjunction with this action, the applicable law, and for the reasons discussed

herein, it is hereby

**ORDERED**, that Whitehurst's amended petition (Dkt. No. 4) is **DENIED** and

**DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and

Order upon the parties to this action by electronic mail, and it is further

**ORDERED**, that any state court records that were not filed in this action be returned

---

[11]     Rule 22 of the Federal Rules of Appellate Procedure also provides that an
appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate
of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).

directly to the Attorney General at the conclusion of these proceedings (including any appeal of

this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:          April 23, 2007
                Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge